UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHELLSEA MONGE,                                    Index No.:

                            Plaintiff,

        -against-                                  **COMPLAINT**

POSITIVE PROMOTIONS, INC., NELSON TAXEL,           **JURY TRIAL DEMANDED**
and ROY RYNIKER,

                            Defendants.
-------------------------------------------------------------------X

Plaintiff, SHELLSEA MONGE ("Plaintiff"), by and through her attorneys The Siegel

Law Firm, P.C., and The Waxman Law Firm, as and for her Verified Complaint against

Defendants, POSITIVE PROMOTIONS, INC. ("Positive Promotions"), NELSON TAXEL

("Taxel"), and ROY RYNIKER ("Ryniker"), ("Defendants") respectfully alleges as follows:

## INTRODUCTION

This is an action for equitable relief and monetary damages on behalf of the Plaintiff

deprived of her statutory and constitutional rights as an employee due to Defendants' gender and

racial discrimination.

## VENUE AND JURISDICTION

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331, as Plaintiff has causes of action pursuant to Title VII of Civil Rights Act, 42 U.S.C.

2000e *et seq*, and discrimination under 42 U.S.C. §1981.

2.      The Court also has supplemental jurisdiction over state and city law claims under

28 U.S.C. §1367.

1

3.      Venue is proper in this District under 28 U.S.C. §1391 because this is where Defendant can be found and transact their affairs and because the events or omissions giving rise to the claims occurred in this District.

## PROCEDURAL REQUIREMENTS

4.      Plaintiff filed a charge of discrimination with the New York State Division of Human Rights on June 9, 2020, which was contemporaneously filed with the Equal Employment Opportunity Commission ("EEOC").

5.      Plaintiff received a right to sue letter on August 5, 2021.

## PARTIES

6.      At all times hereinafter mentioned, Plaintiff is an individual who resides at 350 Lincoln Blvd, Hauppauge, NY 11788.

7.      At all times hereinafter mentioned, upon information and belief, Positive Promotions is a domestic corporation, with its primary place of business located at 15 Gilpin Avenue, Hauppauge, NY 11788, which employs more than 15 employees.

8.      At all times herein mentioned, upon information and belief, Taxel is an individual who resides in the State of New York, and is the Chief Executive Officer ("CEO") of Positive Promotions.

9.      At all times herein mentioned, upon information and belief, Taxel was an owner and/or officer, director, sole shareholder, one of the ten (10) largest shareholders under the New York Business Corporation Law, proprietor, manager, President and/or Chief Executive Officer of Positive Promotions, and had full managerial authority over all Positive Promotions employees.  At all relevant times, Taxel met the definition of an "employer" under the New York

Labor Laws, General Business Laws, and is jointly and severally liable with all Defendants.  At all relevant times, Taxel was Plaintiff's superior.

10.     At all times herein mentioned, upon information and belief, Ryniker is an individual who resides in the State of New York, and at all applicable times was the President of Positive Promotions.

11.     Upon information and belief, Ryniker had full managerial authority to hire, fire and otherwise change the terms and conditions of an employee's employment.

## BACKGROUND

Pregnancy Discrimination Act

12.     Plaintiff was employed by Positive Promotions from in or about February 2018, to on or about August 16, 2019, as a Human Resources Generalist in the Human Resources Department, when Plaintiff was constructively discharged.

13.     The Pregnancy Discrimination Act ("PDA") is an amendment to Title VII of the Civil Rights Act of 1964.

14.     Under the PDA, discrimination based on pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination in violation of Title VII.

15.     Under the PDA, women affected by pregnancy or related conditions must be treated in the same manner as other applicants or employees who are similar in their ability or inability to work.

Discrimination Based on Lactation and Breastfeeding

16.     Lactation, the postpartum production of milk, is a physiological process triggered by hormones.

3

17.     Lactation is a pregnancy-related medical condition, and less favorable treatment of a lactating employee raises an inference of unlawful discrimination.

18.     In order to continue producing an adequate milk supply and to avoid painful complications associated with delays in expressing milk, a nursing mother will typically need to breastfeed or express breast milk using a pump two or three times over the duration of an eight-hour workday.

19.     An employee must have the same freedom to address such lactation-related needs that she and her co-workers would have to address other similarly limiting medical conditions.

20.     Because only women lactate, a practice that singles out lactation or breastfeeding for less favorable treatment affects only women and is therefore facially sex-based.

21.     Permitting employees to use break times for personal reasons except to express breast milk would be a violation of Title VII.

22.     From on or about January 7, 2019 to on or about August 16, 2019, Defendants engaged in a pattern, practice and policy of failing and refusing to provide Plaintiff with reasonable break times and a proper location to express milk.

Violation of the New York State Labor Laws, Section 206-C Regarding Lactation Breaks

23.     New York State Labor Law Section 206-c guarantees nursing mothers break time to pump breast milk at work.

24.     Defendants, as employers, were required under New York State labor Law Section 206-c to make reasonable efforts to provide Plaintiff with a room or other location, in close proximity to Plaintiff's work area to express milk in privacy.

25.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother returning to work following the birth of her son, about her right to take unpaid leave for pumping breast milk.

26.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she may take break time to pump breast milk at work for up to three years following the birth of her son.

27.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she was entitled to at least 20 minutes for each break to express breast milk.

28.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she may take shorter breaks if she chose.

29.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she may be allowed more time if needed.

30.     Defendants as employers, were required, but failed, to allow Plaintiff, a nursing mother, to take a break at least once every three hours to pump breast milk.

31.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she was entitled to take such breaks immediately before or after her regularly scheduled break or meal period.

32.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that if she took breaks to pump breast milk, such time could not be deducted from Plaintiff's regular break or meal time.

33.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she was entitled to work before or after her normal work hours to make up for the

break time taken to pump breast milk, as long as that time falls within the employer's normal work hours.

34.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that she was entitled to have the option of using her regular break or meal time to pump breast milk, but she was not required to do so.

35.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that Defendants were required to provide Plaintiff with a private room or other location close to her work area where she could pump breast milk, unless it would be extremely difficult to do so.

36.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that if a dedicated lactation room could not be provided, a temporarily vacant room may be used instead.

37.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that as a last resort, a cubicle can be used as a lactation location, but it must be fully enclosed with walls at least seven feet tall.

38.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that the room or location provided to pump breast milk cannot be a restroom or toilet stall.

39.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that the place to pump breast milk must contain a chair and a small table or other flat surface.

40.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that The Department of Labor encourages employers to provide, in addition, an electrical

outlet, clean water supply, and access to a refrigerator where nursing mother can store pumped milk.

41.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that the room or place provided by the employer cannot be open to other employees, customers, or members of the public while pumping breast milk.

42.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that the location for pumping breast milk should have a door with a functional lock, or in the case of a cubicle, a sign warning the location is in use and not accessible to others.

43.     Defendants as employers, were required, but failed, to inform Plaintiff, a nursing mother, that employers may not discriminate or retaliate in any way against any employee who chooses to pump breast milk in the workplace.

Violation of the Patient Protection and Affordable Care Act under the FLSA Regarding Lactation Breaks

44.     Under The Patient Protection and Affordable Care Act amended section 7 of the Fair Labor Standards Act ("FLSA"), Defendants were required to provide a reasonable break time for Plaintiff to express breast milk for her nursing child for one year after the child's birth each time such employee has a need to express the milk.

45.     Under the Affordable Care Act, Defendants are required to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

46.     Under the Affordable Care Act, the FLSA requirement of break time for nursing mothers to express breast milk does not preempt State Laws that provide greater protections to employees.

47.     Defendants violated federal, state and local laws protecting Plaintiff as a nursing mother with reasonable break times and a proper location to express milk.

Hostile Work Environment

48.     Under the PDA, an employer must provide a work environment free of harassment based on pregnancy, childbirth, or related medical conditions.

49.     Defendants failed to provide Plaintiff with a work environment free of harassment based on pregnancy, childbirth, or related medical conditions, in violation of the PDA.

50.     Following her return from a shortened maternity leave, Plaintiff required a suitable location to pump breast milk three to four times per day.

51.     As such, Plaintiff requested a suitable location to express breast milk, as well as sufficient breaks, paid or unpaid, to express breastmilk.

52.     Defendants denied Plaintiff's request for a suitable location to express breastmilk and took actions, as more fully set forth below, limiting her ability to pump at work.

53.     Plaintiff suggested a nearby computer room that was on occasion used for computer testing, but was denied such request without any reason.

54.     The head of Human Resources, Kelly Linden, who was Plaintiff's superior, made attempts to provide Plaintiff with the Human Resources Conference Room to express breast milk.  Said location had a door that could be locked, and a sign to put up indicating that it was in use for pumping milk.

55.     Taxel and Ryniker would not allow the doors to be locked or the sign to be displayed on occasions when Plaintiff would attempt to pump milk there.

56.     During occasions when Plaintiff locked the doors, Taxel would shake the door handle and kick the door, shouting "No locked doors".

57.     A colleague of Plaintiff, Brittany Cherry, was walked in on at least three times by others while she was pumping milk in the Human Resources conference with an unlocked door.

58.     Because Plaintiff was not provided with a suitable location to express milk, she would also attempt to utilize the Human Resources office as a place to pump milk.

59.     When she locked or even closed the doors to the Human Resources office to express milk, Taxel would reprimand Plaintiff, stating that the Human Resources doors could not be closed, and that Human Resources needs to be open, with people having the ability to walk in freely.

60.     Plaintiff was interrupted while pumping milk approximately two to three times per week by Taxel.

61.     Plaintiff resided seven minutes away from Defendants' offices.  Plaintiff asked a number of times to be able to return home during her lunch break so that she could nurse her child.  Although Linden had no objections, Taxel and Ryniker refused to permit Plaintiff to return home during her lunch break to nurse her child.  As more fully set forth below, Plaintiff was regularly forbidden to take a lunch break or leave her desk to eat, even when she was pregnant.

62.     The position taken by Defendants in connection with Plaintiff's ability to pump breastmilk at work, made Plaintiff feel self-conscious about pumping, and when she was able to pump, she felt as though she was being monitored.

63.     As a result of Defendants' actions, Plaintiff was forced into uncomfortable situations and conversations with Taxel and Ryniker about where and how often she pumped milk, and why she needed to do so.

64.     From these conversations with Taxel and Ryniker, it was expressed that there was too much work to do, and that pumping milk was wasting time and improper on the job, and that Plaintiff's job was at risk

65.     In addition, to minimize the harassment and anxiety associated with pumping, Plaintiff only pumped one time per day, despite needing to pump three to four times per day, resulting in severe engorgement, mastitis, interruption of her milk supply, and emotional distress.

66.     Plaintiff made complaints to Linden about Taxel and Ryniker's behavior, but no changes were made as a result of such complaints.

67.     As a nursing mother, Plaintiff was subjected to ostracization, ridicule, extra scrutiny, and extra burdens.

68.     Plaintiff was subjected to the aforesaid harassment because of her status as a nursing mother.

Discrimination Based Upon Race

69.     Plaintiff is Hispanic, with her mother being from Puerto Rico and her father from Costa Rica.

70.     During her employment at Positive Promotions, Plaintiff was subjected to offensive comments directed towards her and other Hispanic employees, including by Taxel and Ryniker.

71.     Taxel called Plaintiff such derogatory terms as "chica", and told others that Plaintiff needed to move her "chica ass" or to hurry up and shake her "chica".

72.     Positive Promotions employs minority workers to perform manual "warehouse" work.  The 2019 group of hired employees were routinely referred to by Taxel and Ryniker as

the "Ghetto Class" because it contained a large percentage of Hispanic and African-American employees.

73.    When Positive Promotions sought to fill open positions in the warehouse, Ryniker would ask Plaintiff and her Hispanic colleague in Human Resources on several occasions, if they had "any cousins", insinuating that all Hispanics have large families, were related, or needed work.

Pay Disparity

74.    Hispanic employees, including Plaintiff, were paid less than white employees for comparable work, without legitimate justification.

75.    As a Human Resources Generalist, Plaintiff was paid a starting hourly wage of $13.50 per hour, which was increased to $16.00 per hour for nearly the full duration of her employment, and finally raised to $21.00 per hour during the final few weeks of her employment only after she had made numerous complaints that she was not properly being paid overtime.

76.    Plaintiff's role as a Human Resources Generalist was a mid-level clerical position. There were similar white clerical employees with less responsibility employed by Positive Promotions that were paid more than Plaintiff.

77.    Similarly, many of the non-white employees throughout Positive Promotions were paid less than White employees, and were less likely to be made salaried employees, without justification.

Disparate Treatment

78.    Plaintiff was treated differently than similarly situated White employees due to her race.

79.     Plaintiff was not permitted the same leniency in attending pre-natal and post-natal physician's appointments as White employees, as Plaintiff was questioned and monitored by Ryniker when she had such pregnancy related doctors' appointment.

80.     In contrast, White employees were freely given time off to attend doctors' appointment, and were not questioned by Ryniker.

81.     Defendants purchased and forwarded gift baskets and other presents to White employees after they gave birth, but Plaintiff and other non-White employees were not provided such gifts after they gave birth.

82.     Although White women were provided with a full twelve weeks of maternity leave, Plaintiff was pressured to return to work less than eight weeks after giving birth, as she was harassed by Taxel to return early, who advised that there was too much work to do and someone else would need to be hired to perform Plaintiff's job, insinuating that Plaintiff's job was in jeopardy if she did not return to work.

83.     Although Taxel alleged that Plaintiff needed to return to work early from her maternity leave because there was too much work accumulating, Plaintiff's return to work in early January coincided with the slow period at Positive Promotions.

84.     White women who gave birth were not pressured or coerced to return to work early from their maternity leave.

85.     Although White women were permitted the flexibility to work from home after they had given birth, non-White women, such as Plaintiff were denied the ability to work from home.

86.     Plaintiff's direct supervisor, Linden, approved Plaintiff's request to have the flexibility to work remotely, but the requests were overruled and denied by Taxel and Ryniker.

87.     In addition to Defendants' failure to provide Plaintiff with a suitable place to pump breast milk, as more fully set forth above, Defendants provided White nursing mothers with a suitable place to express breast milk.

88.     As such, White women were able to pump breast milk while working at Positive Promotions in a clean, private location, free from interruption, while Plaintiff and other non-White employees were forced to seek out places to pump in secret, and when caught pumping, were harassed by Taxel or Ryniker.

89.     In essence, Defendants failed to provide Plaintiff and other non-White employees with a suitable place to express breast milk, but provided such a space exclusively to White employees.

Retaliation

90.     Plaintiff made complaints to Linden about the harassment she experienced by Ryniker and Taxel.

91.     Plaintiff also made complaints to Linden, Ryniker, Taxel, and Chief Financial Officer Sam Thomas ("Thomas") concerning the lack of a suitable place to express breast milk, failure to pay proper wages, as well as the disparity in treatment surrounding pregnancy related accommodations provided to White employees, but not to Plaintiff or other non-White employees.

92.     No investigations or attempts to halt the harassing and discriminatory conduct were made by Defendants.

93.     Plaintiff was retaliated against by Defendants after she made protected complaints to Defendants and/or their agents.

13

94.    Plaintiff was constructively discharged on August 16, 2019 as a result of the discrimination and hostile work environment that she experienced.

95.    Plaintiff's first cousin, Charlton Ortega, was fired from his position in the Web Department of Positive Promotions in retaliation for Plaintiff's complaints on August 16, 2019.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
**(Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964)**

96.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "95" as if fully set forth herein.

97.    Plaintiff was employed by Defendants.

98.    Defendants engaged in a pattern and practice of discrimination against Plaintiff with respect to the terms, conditions and privileges of employment because of her gender.

99.    As part of its pattern and practice of employment discrimination, Defendants treated Plaintiff in a manner indicative of gender discrimination.

100.    Defendants knew or should have known about gender discrimination in the workplace.

101.    Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions which she was subjected to, which was clearly motivated by gender discrimination.

102.    Because of the discriminatory acts of Defendant, Plaintiff suffered emotional distress, severe engorgement, mastitis, and interruption of her milk supply.

103.    Defendants acted in an outrageous and systematic pattern of oppression and bad faith, directed at Plaintiff.

104.    Because of the acts of Defendants, Plaintiff suffered emotional distress, humiliation, embarrassment, severe engorgement, mastitis, and interruption of her milk supply.

14

105.    In the discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964)**

106.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "105" as if fully set forth herein.

107.    Plaintiff was employed by Defendants.

108.    Defendants engaged in a pattern and practice of discrimination against Plaintiff with respect to the terms, conditions and privileges of employment because of her race.

109.    As part of its pattern and practice of employment discrimination, Defendants treated Plaintiff in a manner indicative of racial discrimination.

110.    Defendants knew or should have known about racial discrimination in the workplace.

111.    Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions which she was subjected to, which was clearly motivated by racial discrimination.

112.    Because of the discriminatory acts of Defendant, Plaintiff suffered emotional distress.

113.    Defendants acted in an outrageous and systematic pattern of oppression and bad faith, directed at Plaintiff.

114.    Because of the acts of Defendants, Plaintiff suffered emotional distress, humiliation, and embarrassment.

15

115.   In the discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages

## AS AND FOR A THIRD CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964)

116.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "115" as if fully set forth herein.

117.   Defendants engaged in various severe and hostile actions toward Plaintiff due to her membership in protected groups, namely her gender and race.

118.   Due to the severe and hostile acts of Defendants, Plaintiff suffered emotional distress, anxiety, and loss of job opportunities.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Gender Discrimination in Violation of New York State Executive Law §296)

119.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "118" as if fully set forth herein.

120.   New York Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

121.   Defendants discriminated against Plaintiff because of her gender.

122.   As a direct and proximate result of the unlawful employment practices of Defendants, Plaintiff suffered the indignity of gender discrimination and great humiliation.

123.   Defendants' violations caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Retaliation – Violation of 42 U.S.C. §12203)

124.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "123" as if fully set forth herein.

125.    Plaintiff engaged in protected activity by making complaints to Linden about the harassment she experienced by Ryniker and Taxel.

126.    Plaintiff also made complaints to Linden, Ryniker, Taxel, and Thomas concerning the lack of a suitable place to express breast milk, failure to pay proper wages, as well as the disparity in treatment surrounding pregnancy related accommodations provided to White employees, but not to Plaintiff or other non-White employees.

127.    Defendant knew that Plaintiff had engaged in protected activity.

128.    In retaliation to Plaintiff's protected complaints, Defendants engaged in various retaliatory actions against Plaintiff.

129.    Defendants' violations and retaliation caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation – Violation of N.Y. Exec. Law §296(1)(e))

130.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "129" as if fully set forth herein.

131.    Plaintiff engaged in protected activity by making complaints to Linden about the harassment she experienced by Ryniker and Taxel.

132.    Plaintiff also made complaints to Linden, Ryniker, Taxel, and Thomas concerning the lack of a suitable place to express breast milk, failure to pay proper wages, as well as the

disparity in treatment surrounding pregnancy related accommodations provided to White employees, but not to Plaintiff or other non-White employees.

133.   Defendants knew that Plaintiff had engaged in protected activity.

134.   In retaliation to Plaintiff's protected complaints, Defendants engaged in various retaliatory actions against Plaintiff.

135.   Defendants' violations and retaliation caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities

136.   Under N.Y. Exec. Law §297(10), Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**(Hostile Work Environment in Violation of N.Y. Exec. Law §296)**

137.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "136" as if fully set forth herein.

138.   N.Y. Exec. Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race or gender.

139.   The law also makes it unlawful to create an atmosphere where gender and racial discrimination and/or retaliation are encouraged and/or tolerated.

140.   Defendants engaged in various hostile actions against her as a result of her opposition to gender and racial discrimination and as a result of making such complaints with management.

141.   As a direct and proximate result of the unlawful employment practices of Defendants, Plaintiff suffered the indignity of gender discrimination and great humiliation.

142.   Defendants' violations caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

18

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Discrimination Under 42 U.S.C. §1981)

143.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "142" as if fully set forth herein.

144.    Defendants, including Taxel and Ryniker who were both Plaintiff's supervisors, discrimination against Plaintiff is in violation of the rights of Plaintiff afforded to her by 42 U.S.C. §1981.

145.    By the conduct described above, Defendants, including Taxel and Ryniker, intentionally deprived the Plaintiff of the same rights as are enjoyed by White employees to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, including, but not limited to, disparity in pay, terms, conditions, and privileges of employment, in violation of 42 U.S.C. §1981.

146.    As a result of Defendants', including Taxel and Ryniker's, discrimination in violation of section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants', including Taxel and Ryniker's, actions, thereby entitling her to compensatory damages.

147.    Plaintiff's race was the direct and proximate causation for the discrimination that they experienced.

148.    But for Plaintiff's race, she would not have experienced the afore described discrimination at the hands of Defendants.

149.    In the discriminatory actions as alleged above, Defendants, including Taxel and Ryniker, acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

150.     To remedy the violations of the rights of Plaintiff, Plaintiff request that the Court award her the relief prayed for below.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Counsel Fees, Expert Fees, and Costs)

151.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "150" as if fully set forth herein.

152.     Pursuant to 42 U.S.C. §2000e-5(k), in any action or proceeding under 42 U.S.C. §2000e *et seq*., the court, in its discretion, may allow the prevailing party a reasonably attorney's fee (including expert fees).

153.     Pursuant to 42 U.S.C. §1988(b), in any action or proceeding to enforce a provision of 42 U.S.C. §1981, the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee.

154.     Pursuant to N.Y. Exec. Law §297(10), an employer may be liable for attorneys' fees for having committed an unlawful discriminatory practice.

155.     In light of the discriminatory practices committed by Defendants, Plaintiff is entitled to recover all counsel fees, expert, fees and all other costs associated with the litigation of this action.

156.     Plaintiff demands all counsel fees, expert fees, and other costs associated with the litigation of this action.

## JURY TRIAL

157.     Plaintiff demands a trial by jury of all issues in this action that are so triable.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a.  On Plaintiff's FIRST CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

b.  On Plaintiff's SECOND CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

c.  On Plaintiff's THIRD CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

d.  On Plaintiff's FOURTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

e.  On Plaintiff's FIFTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

f.  On Plaintiff's SIXTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

g.  On Plaintiff's SEVENTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

h.  On Plaintiff's EIGHTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $750,000.00;

i.  On Plaintiff's NINTH CAUSE OF ACTION, awarding Plaintiff its costs, disbursements of and attorneys' fees in this action; and

j.  Punitive damages in an amount to be determined at trial.

k.  Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
August 20, 2021

THE SIEGEL LAW FIRM, P.C.
*Attorneys for Plaintiff*

By: _____

Bradley R. Siegel, Esq.
591 Stewart Avenue, Suite 400
Garden City, New York 11530
(516) 558-7559